**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Jamie Gilmore,

                Plaintiff,

                                      Civ. No. 07-1288 (RHK/AJB)
                                      **MEMORANDUM OPINION AND**
                                      **ORDER**

v.

Northwest Airlines, Inc.,

                Defendant.

Mark A. Greenman, Ruth Y. Ostrom, Greenman & Ostrom, Minneapolis, Minnesota, for Plaintiff.

Timothy R. Thornton, Matthew R. Brodin, Briggs and Morgan, P.A., Minneapolis, Minnesota, for Defendant.

**INTRODUCTION**

In this action, Plaintiff Jamie Gilmore alleges that her former employer, Defendant Northwest Airlines, Inc. ("Northwest"), violated the Family and Medical Leave Act ("FMLA") and the Minnesota Human Rights Act ("MHRA") when it terminated her employment; Gilmore also asserts a claim for negligent infliction of emotional distress arising out of her termination. Northwest now moves for judgment on the pleadings, arguing that the Court lacks subject-matter jurisdiction over Gilmore's claims. For the reasons set forth below, the Court will deny Northwest's motion.

## BACKGROUND

Gilmore worked for Northwest as a customer-service agent until February 22, 2006. (Compl. ¶¶ 2, 24; Def. Mem. at 2.) The terms of Gilmore's employment were governed by a collective-bargaining agreement (the "CBA") between Northwest and Gilmore's union. (Id.) The CBA incorporates all of Northwest's "rules, regulations and orders" concerning employees, including its attendance policy. (Id. at 3; Brodin Aff. Ex. 1, Art. 25(I).) Pursuant to that policy, an absence from work is either "accountable" or "excusable," depending on the reason for the absence. While absences that qualify for FMLA leave are "excusable," the attendance policy requires an employee *unexpectedly* absent who believes that her absence qualifies as "excusable" to notify her manager within either two business days or four calendar days (whichever is longer) from the date she became aware of the need for leave. (Id. Ex. 4 at 2.))

Gilmore suffers from "major recurrent depression" that caused her to miss work on several occasions. (Compl. ¶¶ 6-7.) Of particular relevance here, Gilmore missed work beginning on January 10, 2006; she submitted an "FMLA certification" from her doctor indicating that she needed to be absent from work for two weeks. (Id. ¶¶ 9-10.) At the end of the two-week period, Gilmore still was not ready to return to work. (Id. ¶ 11.) She contacted her supervisor, who told her to have her doctor submit the same certification form with the dates revised, which Gilmore did. (Id. ¶¶ 12-14.)

At the end of the extended period, however, Gilmore still was unable to return to work. Accordingly, she once again contacted her supervisor and told him that she did not

-2-

know when she would be able to resume working; she asked her supervisor what she should do about submitting another FMLA certification. (Id. ¶¶ 15-16.) Her supervisor told her to call him each day that she was going to be absent, and advised her that she could fill out new FMLA paperwork when she returned to work. (Id. ¶¶ 17-18.)

On Friday, February 17, 2006, Gilmore contacted her supervisor and told him that she "hoped to be able to work on Monday, February 20th." (Id. ¶ 19.) However, on February 20, and again on February 21, she called her supervisor and told him that she would not be coming to work. (Id. ¶ 20.) She finally returned to work on February 22, 2006. (Id. ¶ 21.) Forty-five minutes into her shift, she was called into her supervisor's office, where she was fired for poor attendance, including her failure to report to work during her FMLA-leave period. (Id. ¶¶ 23-25.)

Following her termination, Gilmore availed herself of the grievance procedure in the CBA.[1] (Id. at 12-13; Brodin Aff. Ex. 6.) Then, on February 22, 2007, Gilmore commenced the instant action against Northwest. She alleges the following three claims in her Complaint: that her termination violated the FMLA (Count I) and the MHRA (Count II), and that Northwest negligently inflicted emotional distress upon her by terminating her employment in violation of the FMLA and the MHRA (Count III). Northwest answered the Complaint and now moves for judgment on the pleadings, arguing that the Court lacks

---

[1] The CBA sets forth a multiple-step process for employee grievances, culminating in arbitration before a System Board of Adjustment. Decisions of the System Board are final and binding. (Def. Mem. at 2-3.) Gilmore is currently awaiting a final decision from the System Board.

subject-matter jurisdiction over Gilmore's claims because they are preempted by the Railway Labor Act, 45 U.S.C. § 151 *et seq.* (the "RLA").

## STANDARD OF REVIEW

Northwest's Motion is denominated as a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). However, the Motion challenges only the Court's subject-matter jurisdiction over Gilmore's claims. Accordingly, the Motion is more appropriately analyzed as a motion to dismiss under Rule 12(b)(1). See, e.g., Rutenschroer v. Starr Seigle Commc'ns, Inc., 484 F. Supp. 2d 1144, 1148 (D. Hawaii 2006) ("[I]f a party raises an issue as to the court's subject matter jurisdiction on a motion for judgment on the pleadings, the district judge [should] treat the motion as if it had been brought under Rule 12(b)(1).") (quoting 5C Wright & Miller, Federal Practice & Procedure: Civil 2d § 1367 (2004)); Riordan v. Am. Fed'n of Gov't Employees, No. 01 Civ. 1136, 2001 WL 1352464, at *2 (S.D.N.Y. Nov. 1, 2001); Rogers v. Atwork Corp., 863 F. Supp. 242, 244 (E.D. Pa. 1994); Engleson v. Burlington N. R.R. Co., No. CV-87-195-GF, 1998 WL 332944, at *1 n.1 (D. Mont. June 19, 1988). Indeed, in its Reply, Northwest dubs its Motion a "Rule 12(b)(1) motion." (Reply at 8.)

There are two types of subject-matter-jurisdiction challenges under Rule 12(b)(1): "facial" attacks and "factual" attacks. See, e.g., Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Hastings v. Wilson, Civ. No. 05-2566, 2007 WL 333617, at *3 (D. Minn. Feb. 1, 2007) (Kyle, J.). A facial attack, as its name suggests, challenges subject-matter jurisdiction based solely on the allegations appearing on the face of the complaint. Osborn

v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In ruling on such a motion, a court must afford the non-moving party the same protections it would be entitled to under Rule 12(b)(6). Id. By contrast, a factual attack depends upon the resolution of facts in order to determine whether subject-matter jurisdiction exists; a court may rely upon matters outside the pleadings when considering such an attack, and the non-moving party does not receive the benefit of Rule 12(b)(6)'s safeguards. Id.

Here, there is no dispute that Northwest has mounted only a facial attack to subject-matter jurisdiction. Accordingly, the Court must assume the facts alleged in the Complaint as true and draw all reasonable inferences in Gilmore's favor when resolving Northwest's Motion. See Bell Atlantic Co. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007).

## ANALYSIS

**I.    The contours of RLA preemption**

"As an airline, Northwest's activities are regulated by the RLA." Carpenter v. Nw. Airlines, Inc., Civ. No. 00-2490, 2001 WL 1631445, at *1 (D. Minn. June 7, 2001). The RLA establishes a mandatory arbitral regime for all "minor" disputes. 45 U.S.C. § 184; Pittari v. Am. Eagle Airlines, 468 F.3d 1056, 1060 (8th Cir. 2006). The RLA, therefore, preempts federal subject-matter jurisdiction over such disputes. See id. at 1060; Bhd. of Maintenance of Way Employees v. Burlington N. Santa Fe R.R., 270 F.3d 637, 639 (8th Cir. 2001).[2]

---

[2] Certain courts use the term "preclusion" when discussing whether the RLA displaces a federal claim, while others use the term "preemption." Compare Roslyn v. Nw. Airlines, Inc., Civ. No. 05-

"Minor" disputes are controversies "arising out of the application or interpretation of [a] collective bargaining agreement." Pittari, 468 F.3d at 1060; accord Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 256 (1994). Stated differently, minor disputes concern "the meaning of an existing collective[-]bargaining agreement in a particular fact situation." Carpenter, 2001 WL 1631445, at *1. "Major" disputes, on the other hand, "relate to the formation of collective [bargaining] agreements or efforts to secure them," such as disputes concerning "rates of pay, rules or working conditions." Norris, 512 U.S. at 252 (internal quotation marks omitted). In sum, "major disputes seek to create contractual rights, minor disputes to enforce them." Id. at 253.

The line between major and minor disputes is undoubtedly a fine one. Bhd. of Maintenance of Way Employees, 270 F.3d at 639 ("there is no bright line to differentiate between major and minor disputes"). This is due, in part, to the fact that the terms "major" and "minor" do not appear in the RLA itself, but rather are "judicially created nomenclature for [certain] statutory categories." United Transp. Union v. Kan. City S. Ry. Co., 172 F.3d 582, 585 n.1 (8th Cir. 1999). Accordingly, deciding whether a dispute is major or minor is "a question of degree and turns upon the facts in each case." Id. at 586.

In the Eighth Circuit, disputes are presumed to be minor. E.g., Bloemer v. Nw. Airlines, Inc., 401 F.3d 935, 939 (8th Cir. 2005). A party asserting that a dispute is minor, therefore, shoulders a "relatively light burden" in establishing exclusive arbitral jurisdiction

---

0441, 2005 WL 1529937, at *2 (D. Minn. June 29, 2005) (preclusion) with Pittari, 468 F.3d at 1061 (preemption). Here, the Court adopts the term used by the parties: preemption.

under the RLA. Schiltz v. Burlington N. R.R., 115 F.3d 1407, 1414 (8th Cir. 1997).

## II. Because this is not a minor dispute, subject-matter jurisdiction is not preempted here

Northwest argues that Gilmore's claims "cannot be addressed without reference to the CBA" and, accordingly, they are minor disputes preempted by the RLA. (Id.) The Court does not agree.

At the outset, it is unclear whether Northwest is asserting that *all* of Gilmore's claims are preempted by the RLA or, rather, that only her FMLA claim is preempted. However, the Motion challenges subject-matter jurisdiction, and the Court enjoys only supplemental jurisdiction over Gilmore's MHRA and negligent-infliction-of-emotional-distress claims; there is no independent basis for subject-matter jurisdiction over either of those claims. Accordingly, the only question the Court must answer is whether the RLA preempts Gilmore's FMLA claim – her lone *federal* claim. If it does, then the Court lacks subject-matter jurisdiction over this entire lawsuit; if it does not, then subject-matter jurisdiction may be properly exercised.

Turning to the merits, Gilmore correctly notes in her Opposition that Northwest has cited no cases in which a court has held that the RLA preempts an FMLA claim. Nor has the Court's own research unearthed any such cases. This is likely because FMLA rights are created by federal law, not by contract; when a unionized employee seeks to enforce a right arising out of a federal statute (like the FMLA), her claim typically can be resolved without reference to her collective-bargaining agreement and, hence, is not minor and is not

preempted. See Norris, 512 U.S. at 256 (claims to enforce rights "independent of" collective-bargaining agreement are not preempted); Carpenter, 2001 WL 1631445, at *3 ("where there is a statutory basis for the claim, the 'major/minor dispute' analysis becomes irrelevant").

The only decision this Court has located concerning RLA preemption of an FMLA claim is Staunch v. Continental Airlines, Inc., No. 1:06-CV-1011, 2007 WL 218729 (N.D. Ohio Jan. 26, 2007), which Gilmore cites in her Opposition. In Staunch, the defendant airline argued that the plaintiff's FMLA claim was preempted by the RLA. The court rejected that argument, noting that the plaintiff's FMLA rights were creatures of statute and not her collective-bargaining agreement:

> Staunch's FMLA claim arises under a federal law that exists independent of Continental's collective bargaining agreement. By asserting an FMLA claim in her amended complaint, Staunch seeks to enforce a federal statutory right, not a contractual right embodied in the collective bargaining agreement. The Court can resolve Staunch's claim through a federal statute and without any reference to the collective bargaining agreement. Consequently, the RLA does not preempt Staunch's FMLA claim in this Court.

Id. at *5.

This principle – that claims arising under federal statutes generally are not preempted by the RLA – has been repeatedly recognized by the Eighth Circuit Court of Appeals and its district courts. For example, the plaintiff in Pittari asserted a claim under the Americans with Disabilities Act. The district court rejected the employer's argument that the claim was preempted by the RLA, and the Eighth Circuit affirmed that conclusion, reasoning that the plaintiff sought "to enforce a federal statutory right, not a contractual

right embodied in the collective bargaining agreement." Pittari, 468 F.3d at 1060-61.

Similarly, in Deneen v. Northwest Airlines, Inc., 132 F.3d 431, 439 (8th Cir. 1998), the Eighth Circuit concluded that the plaintiff's Pregnancy-Discrimination-Act claim was not a minor dispute, and therefore was not preempted by the RLA, because the claim arose independently of the plaintiff's collective-bargaining agreement. See also Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 564-65 (1987) (Federal-Employers'-Liability-Act claim not preempted by RLA); Taggert v. Trans World Airlines, Inc., 40 F.3d 269, 274 (8th Cir. 1994) (state handicap-discrimination claim not preempted by RLA); Roslyn v. Nw. Airlines, Inc., Civ. No. 05-0441, 2005 WL 1529937, at *2-3 (D. Minn. June 29, 2005) (Magnuson, J.) (claim under Uniformed Services Employment and Reemployment Rights Act of 1994 not preempted); Carpenter, 2001 WL 1631445, at *2-3 (Title-VII claim not preempted).[3]

---

[3] At oral argument, Northwest argued that claims arising under federal statutes may be preempted by the RLA, and it directed the Court's attention to Jenisio v. Ozark Airlines, Inc. Retirement Plan for Agent & Clerical Employees, 187 F.3d 970 (8th Cir. 1999), Bowe v. Northwest Airlines, Inc., 974 F.2d 101 (8th Cir. 1992), and Hogan v. Northwest Airlines, Inc., 880 F. Supp. 685 (D. Minn. 1995) (Kyle, J.), in support of that argument. These cases, however, are distinguishable from the instant case.

The plaintiffs in Jenisio and Bowe sued under the Employee Retirement Income Security Act of 1974 to obtain benefits under welfare-benefit plans that were *maintained pursuant to collective-bargaining agreements.* Accordingly, their entitlement to benefits under the plans could not be resolved without interpreting those agreements. Jenisio, 187 F.3d at 973-74; Bowe, 974 F.2d at 103 (noting that lawsuit concerned Bowe's right to disability benefits "*under the collective bargaining agreement*") (emphasis added). Similarly, in Hogan, this Court held that an Americans-with-Disabilities-Act claim was not preempted because the Court needed to interpret the terms of the plaintiff's collective-bargaining agreement in order to ascertain whether the plaintiff was an "applicant" for a vacant position and, hence, whether he could state a *prima facie* case of discrimination. 880 F. Supp. at 691. Unlike in Jenisio, Bowe, and Hogan, however, the Court here need not resort to the

Here, Gilmore alleges that Northwest violated the FMLA when it terminated her employment due to work absences that were statutorily protected. (Mem. in Opp'n at 7; Compl. ¶¶ 23-25, 28-29.) The Court need not look to the CBA in order to resolve this claim – the sole issue is whether the absences were protected under the FMLA. Gilmore's right to be absent from work at Northwest, without reprisal, due to a qualifying "serious health condition" is a right that exists independent of the CBA. See 29 U.S.C. § 2612(a)(1)(D). Accordingly, the Court concludes that the claim is not preempted.[4]

In arguing for preemption, Northwest asserts that the FMLA does not prescribe a time period for providing notice of "unforseen" FMLA absences, but the CBA does.[5] Accordingly, Northwest contends that Gilmore's FMLA claim cannot be resolved without looking to the terms of the CBA. (Def. Mem. at 12-13; Reply at 4-5.) Stated differently, Northwest intends to defend Gilmore's claim by arguing that she did not provide appropriate notice to the company under the CBA when she took unforseen FMLA leave and, in order to decide whether her notice (and, hence, her termination) was appropriate, the

---

CBA in order to determine whether Northwest violated the FMLA when it terminated Gilmore's employment, as set forth in more detail below.

[4] In some instances, a federal claim may be "inextricably intertwined" with the interpretation of a collective-bargaining agreement and, hence, be preempted. See Schiltz, 115 F.3d at 1415. Northwest makes no such argument here, nor does the Court believe that Gilmore's FMLA claim is "inextricably intertwined" with an interpretation of the CBA.

[5] Although the FMLA *itself* does not address when an employee must notify her employer about unforseen leave, the regulations promulgated thereunder state that an employee should notify her employer "as soon as practicable," generally "within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances." 29 C.F.R. § 825.303(a).

Court must construe the terms of the CBA.

For purposes of the Court's preemption analysis, it makes no difference that the Court might have to interpret the CBA to resolve Northwest's *defense* to Gilmore's FMLA claim, rather than the claim itself.  See, e.g., Luecke v. Schnucks Mkts., Inc., 85 F.3d 356, 360 n.4 (8th Cir. 1996).  Yet, Gilmore alleges that her termination was improper under the FMLA *regardless* of whether it was "arguably justified" under the CBA due to insufficient notice.  In other words, Gilmore claims that the FMLA imposes greater restrictions on Northwest's ability to terminate her employment than does the CBA.  (See Mem. in Opp'n at 10 ("The protections contained in [the] CBA are insufficient to remedy violations of the FMLA.").)  Clearly, then, the FMLA claim does not require the Court to interpret or apply any provision of the CBA; it only raises an issue of federal law.  See Buell, 480 U.S. at 565 (no preemption "where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers").[6]

By way of analogy, if the CBA permitted Northwest to terminate employees at any time on account of their age or gender, Northwest could argue that such a termination was "arguably justified" under the CBA.  The termination, nevertheless, would violate federal law; a claim challenging the termination, therefore, would not be preempted.  See Norris, 512 U.S. at 261 ("[The RLA] does not grant the parties to a collective bargaining agreement

---

[6] In addition, Northwest's defense is contrary to the allegations in the Complaint, in which Gilmore alleges that she timely provided notice to the company for every day that she was absent.  (See Compl. ¶¶ 9-20.)  For purposes of the instant Motion, the Court must accept those allegations as true.  (See supra at 5.)

the ability to contract for what is illegal . . . . [It] would be inconsistent with congressional intent . . . to preempt . . . rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.").[7]  The same is true here – even if Gilmore's termination was "arguably justified" under the CBA, she may still avail herself of any independent protections afforded by the FMLA.

Northwest also argues that Gilmore's FMLA claim is preempted because any employment dispute that "implicate[s] practices, procedures, implied authority, or codes of conduct that are part of the working relationship" is a minor dispute.  (Def. Mem. at 10 (quoting Fry v. Airline Pilots Ass'n, Int'l, 88 F.3d 831, 836 (10th Cir. 1996)).)  Yet, the FMLA is neither a practice, procedure, nor code of conduct – it is a federal statute that provides minimum rights to employees independent of those negotiated or otherwise bargained for.  Moreover, Northwest overestimates the reach of the quoted language from Fry.  Many companies, including Northwest, have anti-discrimination policies; broadly applying Fry, therefore, would mean that discrimination claims brought by employees of such companies would be preempted.  As discussed above, however, discrimination claims arising under federal law generally are not preempted by the RLA, notwithstanding any corporate policies also prohibiting discrimination.  See Pittari, 468 F.3d at 1060-61;

---

[7] See also Trans World Airlines, Inc. v. Sinicropi, 887 F. Supp. 595, 606 (S.D.N.Y. 1995) (presenting the following hypothetical:  if collective-bargaining agreement mandated that managerial employees be paid $18/hr., any claim seeking that wage would be preempted because right to this amount exists solely because of CBA; if, however, CBA set pay rate at $2/hr., employee's claim challenging that rate would not be preempted because federal law establishes minimum wage).

Deneen, 132 F.3d at 439; Carpenter, 2001 WL 1631445, at *2-3. Simply put, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted." Norris, 512 U.S. at 260.[8]

Finally, Northwest argues that Gilmore has conceded that this is a minor dispute because she grieved her termination under the CBA and is awaiting a final decision from the System Board. (Def. Mem. at 12-13.) Yet, Northwest has cited no cases, and the Court is unaware of any, holding that a dispute is transformed from "major" to "minor" simply because an employee opted to grieve her termination under her collective-bargaining agreement before filing suit in federal court. In fact, just the opposite appears to be true: "the existence of a potential CBA based remedy [does] not deprive an employee of independent remedies available under [federal] law." Norris, 512 U.S. at 261 (wrongful-termination claim in federal court not preempted by RLA even though plaintiff grieved his termination under collective-bargaining agreement).

At bottom, the CBA is not the "only source" of the rights Gilmore seeks to enforce here, id. at 260, and her FMLA claim cannot be "conclusively resolved" merely by

---

[8] Even if the Court *were* required to review the CBA in order to resolve Gilmore's FMLA claim, the claim would not be preempted *per se*. See Norris, 512 U.S. at 261 n.8 ("when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of . . . litigation plainly does not require the claim to be extinguished"); Gore v. Trans World Airlines, 210 F.3d 944, 949 (8th Cir. 2000) (same). Gilmore's FMLA claim would be preempted only if (1) the Court had to resort to the CBA in order to resolve the claim *and* (2) the meaning of the controlling provisions therein were disputed. Id. The Court need not opine whether the pertinent terms of the CBA are subject to dispute here, since it concludes that resort to the CBA is unnecessary to resolve Gilmore's FMLA claim.

interpreting the CBA, Consol. Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 305 (1989). Accordingly, the claim is not preempted.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. No. 11) is **DENIED**.

Dated: August  21 , 2007                        s/Richard H. Kyle
                                                RICHARD H. KYLE
                                                United States District Judge